## WESTERN ELECTRIC CO. v. WESTERN TEL. CONST. CO. et al.

### (Circuit Court of Appeals, Seventh Circuit. February 7, 1899.)

### No. 421.

PATENTS—CONSTRUCTION OF CLAIMS—IMPROVEMENT IN TELEPHONE SWITCHES.

The Roosevelt patent, No. 215,837, for an improvement in telephone switches, is entitled to only a very narrow construction, and is limited to the mechanism described for so connecting the transmitting instrument with a spring switch that the unskilled operator, without intending or understanding the result, shall cut out and in the call bell by the act of raising and dropping the instrument in using it.

Appeal from the Circuit Court of the United States for the Northern Division of the Northern District of Illinois.

This was a suit in equity by the Western Electric Company against the Western Telephone Construction Company, James E. Keelyn, Madison B. Kennedy, and Isador Baumgartl, for the alleged infringement of a patent for an improved telephone switch. From a decree dismissing the bill, complainant appeals.

This suit was brought to obtain an accounting, and an injunction against infringement of letters patent of the United States No. 215,837, issued on May 27, 1879, to Hilborne L. Roosevelt, of New York, for an "improvement in telephone switches." The specification, excepting the technical description of the device, reads as follows: "It is a matter of considerable importance in connection with several telegraphic transmitting instruments, more especially telephones, that the operation of the transmitting instrument should automatically signal to the receiving instrument at the other end of the line the fact that a message is about to be transmitted, whereby the receiving operator is enabled to prepare himself for the reception of such messages. This is particularly true where the transmitting operator is not of necessity a skilled person in the electrical art. An instance of this can be readily given: Supposing it is desired to transmit a message to a distant point by means of a telephone or similar transmitting instrument, it is obviously desirable that the mere fact of the preparation of such transmitting instrument or telephone for sending the signal should of itself prepare the receiving operator at the other end of the line for the reception of the message. If, for instance, a telephone were hanging in a position to be raised by the transmitter, it would be very desirable that the mere fact of raising such telephone to the lips should of itself inform the receiving operator that a message was to be transmitted. My invention is designed to accomplish this result. * * * It is obvious that by this arrangement unskilled persons must, as it were, automatically make all the necessary changes and switchings from the signal battery and bell-call to the transmitting and receiving telephones, and that this is done without the possibility of mistake." The first, second, third, and seventh claims, of which infringement is alleged, read as follows: "(1) The combination, with a telephone, of a circuit closing or changing portion

and screws or points, the circuit-closing portion being arranged to be placed in contact with one screw point through the influence of the telephone when not being used, and to be placed in contact with the other screw or point when the spring is freed from the influence of the telephone. substantially as described. (2) The combination of a spring switch, connecting wire connected therewith, and a transmitting instrument suspended thereto, substantially in the manner described, whereby the raising of the transmitting instrument causes the spring switch to make or break or alter the electric current. (3) The combination of a spring switch and connecting wire connected therewith, and a transmitting instrument suspended thereto, combined and connected together, substantially as herein described, whereby a circuit is made through a signaling instrument when the weight of the transmitting instrument is on the switch, while the circuit is closed through the transmitting instrument itself when its weight is removed from the switch." "(7) The combination of a connecting wire carrying an electric circuit, and attached to the spring switch having contact points, and a transmitting instrument suspended to said spring switch, connected and combined substantially as described, whereby the weight of the transmitting instrument upon the switch causes the switch to complete a circuit through itself, and to a ground or signaling instrument, while when the transmitting instrument is raised a circuit is made through said transmitting instrument."

Fig. 1 of the patent is essentially the same as the left-hand portion of Fig. 2, here reproduced:

Figure 2.

The appellees made and sold two forms of apparatus, of which the record contains diagramatic illustrations, which are agreed to be correct. They both infringe, if either does, and the diagram of one only is here reproduced:

*Diagram Defendant's Apparatus No. 1.*

The prior art in evidence consists of letters patent No. 93,816, issued on August 17, 1869, to Eugene Fontaine, for an "improvement in electric fire and burglar alarms," and No. 103,150, granted on May 17, 1870, to Sylvanus D. Cushman, for "improvements in signal boxes for fire-alarm telegraphs."

The court below found that there had been no infringement, and in the course of its opinion said: "I feel myself compelled, in view of the then state of the art, and of the specific difficulty that the mechanism of Roosevelt was avowedly intended to circumvent, to hold that his patent is self-limited to such mechanism as automatically cuts in and out the call bell (including the ringing of the same) by the mere act of lifting and dropping the telephone. In the defendant's telephone, the call bell is in circuit before the receiver is lifted; in the complainant's, the act of lifting puts it in circuit. In the defendant's mechanism, when the connection is closed the receiver must be hung upon a fork,—a prescribed manual act on the part of the operator; in complainant's, it is dropped on its cord, thus avoiding this otherwise definite manual act. In the Roosevelt mechanism, the lifting of the telephone actuates the circuit so as to ring the bell; in the defendant's mechanism, such actuation is only obtained by the manual turning of a crank or pressing of a button. In all these respects the defendant's mechanism is clearly differentiated from Roosevelt's purpose, viz. an arrangement whereby conscious manipulation of the switches and the call bell was to have been dispensed with. I recognize that the conception of changing back and forth the switches by virtue of the resting and lifting of the telephone upon the forks is a close copy of Roosevelt's conception, and that perhaps his claims, standing apart from his description, are broad enough to cover the incidental deviations. But, after all, the main purpose of the invention must control the scope of the claims, and such purpose certainly did not include the defendant's mechanism." After a quotation of this part of the opinion, the brief for the appellant says: "Such restriction of the claims, especially those of a pioneer patent like that of Roosevelt's, we contend, is unwarranted. The defendants have added a hook to their spring switch, so that the weight of the telephone may come directly upon the switch, instead of having the cord attached to the switch, so that the weight is placed upon the switch through the medium of the cord. The actual working of the switch in each case will be found substantially identical. For example, as shown in Fig. 2 of the patent, we find the circuit of the bell, B, closed at A', and the circuit of the telephone, T', opened at P'; that is, when the weight of the telephone is on the switch, as shown in Fig. 2, the bell is in circuit; when the weight of the telephone is removed from the switch, the spring switch moves from contact A' to P', thus opening the circuit of the bell at A' and closing the circuit of the telephone at P'. In each of the defendants' devices precisely the same switching is accomplished by placing the weight of the telephone on the hook and by removing it from the same. The second sentence of the passage quoted from Judge Grosscup's opinion states, in substance, that in defendants' apparatus the call bell is in circuit before the receiver is lifted, but that in complainant's apparatus it is the act of lifting the telephone which puts the bell in circuit. It is true that in each of the forms of defendants' apparatus the call bell is in circuit before the receiver is lifted, but our consideration of the circuits of Fig. 2 of complainant's patent shows that the same statement is also true of complainant's apparatus; that is, there is no distinction in this regard between complainant's apparatus, as illustrated in Fig. 2, and defendants' apparatus, as illustrated in diagrams No. 1 and No. 2, and as shown in the models 'Wall Set' and 'Desk Set.' It is intimated that Roosevelt's claims, standing apart from his description, are broad enough to cover the incidental deviations found in defendants' apparatus. This makes clear, we think, the main question involved in this appeal. It is as to the legal construction of the claims in question, considered in connection with the descriptive portion of the specification. The record shows that this Roosevelt switch is the very first automatic switch in the art. The claims in question are not broader than the prior art warrants. Their language is broad enough to subordinate the defendants' apparatus. Must, then, details mentioned in the specification be injected into them so as to make them of no value whatsoever?" The experts have asserted their opposing views with great positiveness and zeal, one of them asserting that the patent in suit is "one of a very high order, possessing the attributes of novelty and inventive ingenuity in the highest degree," while the other concludes his review of the prior art with a declaration of belief that he had demonstrated the total lack of invention "in the

devices or the association of devices for the purpose described and claimed" at the date of the application for the patent.

Charles A. Brown and George P. Barton, for appellant.

Stanley Stout, for appellees.

Before WOODS, JENKINS, and SHOWALTER, Circuit Judges.

WOODS, Circuit Judge, after stating the case, delivered the opinion of the court.

The Roosevelt patent is for a mechanism, purely. It is designed for use in connection with telephones, but its essential character is no more affected by that fact than the character of a device for opening and closing a gate in a head race would be affected by the fact of its use for turning off and on and regulating a current of water on its way to a mill wheel. Electric currents, whether carried upon the wires of a telephone or a telegraph, were not new, and by no pretense can be brought within or made to affect the scope of this patent. Switches employed in telegraphic and telephonic devices to shift the electric current from one wire to another were not new. Such a switch, connected permanently at one end with a current conducting wire (x in the patent), and capable of being shifted at its other end from one point of contact to another (as from P to A in the patent), was a matter of common knowledge, and the problem for the solution of which Roosevelt obtained a patent was to effect that shifting automatically. That problem was not a whit different mechanically because the purpose was to shift and direct the passage of electricity over wires, than it would have been if the wires had been tubes through which the passage of a liquid was to be determined by the opening and closing of valves by means of a shifting switch or lever. It was, of course, no problem at all, to mechanics of ordinary skill, after the telephone was invented, with a switch in position, to devise means of shifting the movable end from the point of normal contact to the other point prepared for it; but, if the like had never been done before, it would doubtless have been an inventive achievement to provide for an automatic movement of the switch, which should be effected by the mere use of the telephone in the ordinary way in the hand of an unskilled operator. The like had been done, however, by Cushman, when he devised a signal box for fire alarms "with a switch mechanism so constructed and arranged that the shutting of the outer door of the signal box switches the electro-magnets out of the telegraphic circuit," etc. That switch, as a mechanism, is not to be distinguished from this of the patent because the particular results to be accomplished are not the same, and are not brought about exactly in the same way. The shifting of currents by a switch is one thing. The subsequent course of the currents, and what they do or what is done with them, are different things, unaffected by, and without effect upon, the character of the switch. So, too, the idea and a form of automatic switch are illustrated in the burglar alarm of Fontaine. It is therefore impossible, even without looking for automatic switches in the mechanic arts outside of electrical devices, to concede to this patent the character of a pioneer invention. It need not be said that

there was no degree of invention in so connecting the transmitting instrument with the spring switch that the unskilled operator, without intending or understanding the result, should accomplish the necessary movement of the switch merely by lifting the instrument, and, on quitting, should involuntarily, and with equal want of understanding, restore the switch to its normal position simply by releasing his hold of the instrument. This, the specification puts beyond doubt, was what the patentee supposed he had accomplished; and, the invention being from necessity very narrow, there is no good reason for giving a wider scope to the claims of the patent, even if by their terms they are not so limited. In the second, third, and seventh claims, the transmitting instrument is described as suspended to the switch; and the same meaning is made evident in the first claim, by the terms of which the switch is "to be placed in contact with one screw point through the influence of the telephone when not being used," and "is freed from the influence of the telephone, substantially as described."

No claim of the patent can fairly be given a construction which would include either form of apparatus manufactured by the appellees. The decree below is therefore affirmed.

Judge SHOWALTER did not participate in this decision.